JUSTICE WHEAT,
concurring.
¶26 I generally agree with the result and reasoning of the Coral;. I write separately to address the problems created where, as here, counsel alleges his own ineffective assistance on appeal after representing a client at trial.
¶27 It is both honorable and ethical for a lawyer to put his client’s interests before his own and admit to error. However, evaluating claims of ineffective assistance of counsel requires an objective analysis of the lawyer’s professional conduct or lack thereof. Strickland, 466 U.S. at 687-88, 104 S. Ct. at 2064-65. An inherent conflict of interest *91 arises when counsel alleges his own ineffectiveness, and this conflict could easily cloud a lawyer’s objective examination of his own professional conduct. See People v. Bailey, 9 Cal. App. 4th 1252, 1254-55 (Cal. App. 1992); In re Fountain, 74 Cal. App. 3d 715, 719 (Cal. App. 1977).
¶28 Montana Rule of Professional Conduct 1.7 provides that a conflict of interest exists when “there is a significant risk that the representation of one or more clients will be materially limited... by a personal interest of the lawyer.” It is hard to imagine a more personal interest than the competency and success of one’s own work. In an effort to obtain a new trial, counsel may be encouraged to raise questionable allegations of their own ineffectiveness. Alternatively, a lawyer who wants to avoid consequences for his error may subtly underemphasize or fail to identify his own deficient professional conduct. Finally, counsel may simply fail to recognize certain claims on appeal due to his own ineffectiveness on a certain issue. In any of these scenarios, the attorney’s objective examination of his own error is cast into doubt. Additionally, an attorney who is ineffective at tried may later be accused of being ineffective on appeal, leaving IAC open to further attack without a fined resolution. Bailey, 9 Cal. App. 4th at 1255.
¶29 This conflict of interest is especially concerning since the client makes “decisions concemingthe objectives of representation” but relies on the conflicted lawyer to decide whether a claim has merit. Mont. R. Prof. Conduct 1.2(a) (2009). The client often lacks the technical legal expertise to decide whether an IAC claim has any merit, and so relies on the attorney to recognize his own deficiency and remedy it. That is likely the case here, where counsel’s alleged deficiency was technical and unobvious, involving objections to summaries of electronic evidence, expert witnesses in computer technology, and objections to improper statements during closing. With no expertise of his own and likely without consulting outside counsel, a client in this situation is bound to rely on advice from a lawyer who has an interest in the client’s decision. At bare minimum, counsel must obtain the client’s informed written consent to representation burdened by such a conflict of interest. Mont. R. Prof. Conduct 1.7(b)(4). Comment [18] of ABA Rule 1.7 notes that “[i]nformed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client.” Yet even this protection is insufficient where a client lacks the technical knowledge to decide the *92 merits of an IAC claim and must rely on his conflicted attorney to decide whether or not an error has occurred.
¶30 We should require an attorney in this situation to withdraw representation as soon as he is aware of his own ineffectiveness. First, if counsel became aware of his error before the resolution of trial, this would prompt a district court to conduct a Gallagher inquiry to immediately determine whether IAC has occurred and whether new counsel or a new trial is needed. See State v. Gallagher, 1998 MT 70, ¶¶ 24-26, 288 Mont. 180, 955 P.2d 1371. If ineffectiveness does not become apparent until after trial, this requirement would effectively mandate new counsel to objectively examine the professional conduct in question and advise the client on the validity of an IAC claim. That fresh look at the trial record creates an appropriate check on the trial attorney, as new counsel would have no incentive to minimize the errors of trial counsel, and would not be prone to file frivolous IAC claims in pursuit of success at trial. By requiring a fresh look at counsel’s conduct, a client would receive objective advice as to whether his counsel was actually deficient, and could better decide whether an appeal on those grounds has merit.